UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | |
| LUIS BERROA, | * | Criminal Action No. 19-cr-10164-ADB |
| | * | |
| Defendant. | * | |
| | * | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS**

BURROUGHS, D.J.

Defendant Luis Berroa ("Defendant") has moved to suppress evidence obtained during a search of 3 Newton Street, Apartment No. 2 in Lawrence, Massachusetts ("3 Newton Street").[1] [ECF No. 64]. Defendant argues that the search was improper because the investigating authorities failed to establish probable cause based on Drug Enforcement Agency ("DEA") Special Agent Jill Hardie's ("Agent Hardie's") affidavit, which detailed the sale of illegal drugs at various locations including 3 Newton Street. [ECF No. 66-2 ("Hardie Affidavit"); ECF No. 69 at 7 ("[Defendant's] memorandum is concerned only with the lack of probable cause to obtain a search warrant for 3 Newton Street, apartment 2 and certain telephones located therein.")]. For the reasons outlined below, Defendant's motion to suppress, [ECF No. 64], is DENIED.

I. **BACKGROUND**

The relevant facts are undisputed, and, for present purposes are drawn primarily from the Hardie Affidavit. See generally [ECF Nos. 69, 72]. Based on information provided by a Confidential Source (the "CS"), in October 2018, the DEA began investigating Encebio

---

[1] Although other locations were searched as part of the investigation, Defendant seeks to suppress only the fruits of the search of 3 Newton Street. See generally [ECF No. 64].

Esperitusanto for distributing crack cocaine in and around Lawrence, Massachusetts.  [Hardie

Affidavit ¶¶ 8–9].  During the investigation, the CS made multiple controlled purchases of crack

cocaine, including from Esperitusanto, who sold or gave crack cocaine to the CS on several

occasions as summarily detailed in the table of interactions below.

| **Date** | **Location** | **Interaction** |
|---|---|---|
| Nov. 8, 2018[2] | 141 Newton Street, First Floor, Lawrence, Massachusetts 01843 | The CS picked up Esperitusanto at 141 Newton Street. |
| | 277 Salem Street, Apt. #2, Lawrence, Massachusetts 01843 | 100-gram transaction occurred at 277 Salem Street. |
| Nov. 21, 2018[3] | 92 Bailey Street, Lawrence, Massachusetts | The CS picked up Esperitusanto at 92 Bailey Street. |
| | 277 Salem Street, Apt. #2, Lawrence, Massachusetts 01843 | 100-gram transaction between the CS and Esperitusanto. |
| Feb. 8, 2019[4] | 141 Newton Street, First Floor, Lawrence, Massachusetts 01843 | 62-gram sample given to the CS by Esperitusanto |
| Feb. 28, 2019[5] | 141 Newton Street, First Floor, Lawrence, Massachusetts 01843 | Unidentified male seen leaving 141 Newton Street, carrying white plastic bag, and traveling to 3 Newton Street. |
| | 3 Newton Street, Apt. #2, Lawrence, Massachusetts 01843 | 50-gram transaction between the CS and unidentified male inside of the apartment. |

Relevant for the motion to suppress, the Hardie Affidavit described a February 28, 2019

drug deal that took place at 3 Newton Street.  [Hardie Affidavit ¶ 26].  In a recorded phone call,

the CS told Esperitusanto that he needed "50" "pedrito," meaning 50 grams of cocaine.  [Id.].

---

[2] [Hardie Affidavit ¶¶ 11–15].

[3] [Id. ¶¶ 16–20].

[4] [Id. ¶¶ 21–25].

[5] [Id. ¶¶ 26–29].

Esperitusanto told the CS to meet him at 3 Newton Street.  [Id.].  DEA agents wired the CS with an audio and video recording device and searched him and his vehicle for contraband.  [Id. ¶ 27]. Thereafter, DEA agents observed an unidentified male enter 141 Newton Street in Lawrence, Massachusetts ("141 Newton Street"), leave that building with a white plastic bag, and then enter 3 Newton Street to meet the CS.  [Id. ¶ 28].  Once inside 3 Newton Street, the unidentified male handed the CS a package that was found to contain 50 grams of a substance that field-tested positive for the presence of cocaine.  [Id. ¶ 29].

This transaction and Agent Hardie's own experience formed the basis of the search warrant application for 3 Newton Street.  See generally [Hardie Affidavit].  Agent Hardie has worked for the DEA since May 2012, and as a Special Agent since September 2016.  [Id. ¶ 1]. Based on her experience as an investigator, Agent Hardie attested that it is common for drug dealers to keep a stash of drugs, drug paraphernalia, records detailing their transactions, firearms, and other evidence of drug-related crimes in their residences.  [Id. ¶¶ 36–46].  Based on her professional experience as well as her experience with this investigation, Agent Hardie set forth in her affidavit facts that she believed were sufficient to establish probable cause to support the issuance of search warrants for various locations, including 3 Newton Street.  [Id. ¶ 48].  On March 12, 2019, the magistrate judge found that the Hardie Affidavit established probable cause and granted Agent Hardie's application for a search warrant for 3 Newton Street.  [ECF No. 66-4].

On March 13, 2019, several DEA agents executed the search warrant for 3 Newton Street.  [ECF No. 66-5 ¶ 7].  The agents found Defendant sleeping in one of the bedrooms.  [Id. ¶ 8].  In that same bedroom, agents also found "guns, ammunition, drug ledgers, a scale, bags of

suspected fentanyl, one bag of suspected Xanax, one bag of suspected cocaine and a finger press."  [ECF No. 64 ¶ 5; ECF No. 66-5 ¶¶ 7–8].

On July 6, 2020, Defendant moved to suppress the evidence from the March 13, 2019 search, arguing that the magistrate judge improperly found probable cause to search 3 Newton Street.  [ECF Nos. 64, 69].  The Government opposed on July 20, 2020.  [ECF No. 72].

## II.   LEGAL STANDARD

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched—the so-called 'nexus' element."  United States v. Rodrigue, 560 F.3d 29, 32–33 (1st Cir. 2009) (quoting United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005)).  "Probable cause exists when there is a 'fair probability that contraband or evidence of a crime will be found at a particular place.'"  United States v. Torres-Rosario, 588 F. Supp. 2d 128, 131 (D. Mass. 2008) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  "Information supporting probable cause for a warrant is often set forth in an affidavit provided by a law enforcement officer . . . ."  United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013).  "An affidavit supporting a search warrant is presumptively valid," id., and "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v United States, 393 US 410, 419 (1969)).  A reviewing court's "duty is simply to ensure that the magistrate [judge] had a substantial basis for . . . conclud[ing] that probable cause existed."  United States v. Bregu, 948 F.3d 408, 417 (1st Cir. 2020) (citations and quotation marks omitted).

"[I]t is well-established that '[i]n determining the sufficiency of an affidavit, [courts] consider whether the totality of the circumstances stated in the affidavit demonstrates probable

cause to search the premises.'" United States v. Tiem Trinh, 665 F.3d 1, 10 (1st Cir. 2011)

(quoting United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002)).  "Where the finding of

probable cause depends on information supplied by an informant, courts review that

determination in light of" several factors.  Torres-Rosario, 588 F. Supp. 2d at 131.  These may

include:

> whether an affidavit supports the probable "veracity" or "basis of knowledge" of
> persons supplying hearsay information; whether informant statements are
> self-authenticating; whether some or all of the informant's factual statements were
> corroborated wherever reasonable and practicable (e.g., through police
> surveillance); and whether a law enforcement affiant included a professional
> assessment of the probable significance of the facts related by the informant based
> on experience or expertise.

United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996); Tiem Trinh, 665 F.3d at 10

(stating that factors are "non-exhaustive").  "None of these factors is indispensable; thus,

stronger evidence on one or more factors may compensate for a weaker or deficient showing on

another."  Zayas-Diaz, 95 F.3d at 111.

Where there are no proven allegations of misstatements or omissions that were

intentional or reckless, courts generally owe deference to a magistrate judge's finding of

probable cause.  See United States v. Roman, 942 F.3d 43, 50 (1st Cir. 2019) (citing Burke v.

Town of Walpole, 405 F.3d 66, 82 (1st Cir. 2005)).  Here, because Defendant concedes there are

no misstatements of facts, [ECF No. 69 at 24], the Court will reverse the finding of probable

cause only if there is "no substantial basis for concluding that probable caused existed."  United

States v. Faust, 853 F. 3d 39, 46 (1st Cir. 2017) (quoting United States v. Dixon, 787 F.3d 55, 59

(1st Cir. 2015)).

III.    **DISCUSSION**

A.    **Hardie's Affidavit Established Probable Cause**

Although a warrant application must adequately support both the "commission" and "nexus" elements, Dixon, 787 F.3d at 59, here, Defendant has conceded the commission element.  [ECF No. 69 at 15 (noting that 3 Newton Street was the location of a drug transaction); ECF No. 72 at 5 (noting that Defendant conceded this point)].  The issue before the Court is whether there was a sufficient nexus between the drug dealing in question and 3 Newton Street.  [ECF No. 69 at 15–21].  Courts "evaluate the nexus element in the familiar way, examining 'whether, given all the circumstances set forth in the affidavit . . . there [was] a fair probability that contraband or evidence of a crime [would] be found in a particular place.'"  Bregu, 948 F.3d at 417 (alterations in original) (quoting Gates, 462 U.S. at 238).

First, Defendant argues that the CS never opined about drugs being stored at 3 Newton Street, that law enforcement never conducted surveillance to verify 3 Newton Street as a stash house, and that law enforcement never established that Esperitusanto had drugs, drug paraphernalia, or drug records at 3 Newton Street.  [ECF No. 69 at 14–15].  Second, Defendant argues, relying primarily on Roman, that the magistrate judge did not have a substantial basis for concluding that probable cause existed.  [Id. at 15–19].

The Government responds that, based on "the four controlled purchases of narcotics arranged by cell phone communications, the February 28, 2020 controlled purchase which occurred *inside* [3 Newton Street], and the ongoing nature of the criminal enterprise, the Hardie Affidavit provided ample support for Magistrate Judge Dein's determination that there was probable cause to believe that evidence of drug trafficking would be found in [3 Newton Street]." [ECF No. 72 at 6 (emphasis in original)].  The Government also argues, citing United States v. McLellan, 792 F.3d 200, 208 (1st Cir. 2015), that the omissions highlighted by Defendant are

immaterial because there was more than enough information to support a finding of probable cause and the magistrate judge's determination would not have been negated or altered even if the omitted information had been included in the warrant application. [ECF No. 72 at 8].

"To satisfy the nexus element, the warrant application 'must give someone of "reasonable caution" reason to believe that evidence of a crime will be found at the place to be searched.'" Faust, 853 F. 3d at 46 (quoting Ribeiro, 397 F.3d at 49). The facts and circumstances leading to the belief that evidence will be found need not be direct observation, but rather "may be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime]." Roman, 942 F.3d at 50 (citing United States v. Feliz, 182 F.3d 82, 88 (1st Cir. 1999)). In the context of drug trafficking, the mere fact that someone sells drugs is not alone enough to warrant finding probable cause to search that person's residence. Roman, 942 F.3d at 50 (citing United States v. Khounsavanh, 113 F.3d 275, 285 (1st Cir. 1997)). Instead, to permit an inference of nexus, "generalized observations . . . should be combined with specific observations, or facts connecting the drug dealing to the home." Id. at 52 (internal quotation marks omitted) (citing Ribeiro, 397 F.3d at 50–51).

Given the record before it, the Court concludes that there was a sufficient basis for finding probable cause that evidence of drug trafficking would be found at 3 Newton Street. Defendant highlights numerous missing facts and circumstances that, if known to the affiant and included in the affidavit, would have strengthened the application presented to the magistrate judge in support of probable cause, including the CS opining on the storage of drugs at 3 Newton Street; additional surveillance of 3 Newton Street, beyond the February 28 transaction; and increased connections between Esperitusanto and drug-related evidence at 3 Newton Street.

7

[ECF No. 69 at 14–15].  The presence of these pieces of information, however, were not

necessary for the magistrate judge to find probable cause.  These facts might have tied the

residence more closely to drug trafficking and strengthened the inference of nexus, but where

drug trafficking is already known to be occurring inside the home, the tie between the residence

and the crime is already present.  See United States v. Hicks, 575 F.3d 130, 137 (1st Cir. 2009)

(affirming finding of probable cause based on affidavit that included information about known

drug dealing out of the residence, surveillance, and past criminal history); see also Roman, 942

F.3d at 52–53 (stating that generalized observations concerning where drug traffickers store

evidence must be combined with specific observations that the residence is either a hub of drug

trafficking communications, is a place of drug distribution organization, or the defendant moves

back and forth from the residence in relation to drug transactions to allow an inference of nexus).

In Roman, the court granted a motion to suppress where the affidavit had misstatements of fact

(it provided an incorrect address) and the warrant application failed to show "any drug activity

had been conducted from the residence."  942 F.3d at 53.

Here, the Hardie Affidavit, which supported the warrant application, sufficiently

demonstrated that drug trafficking occurred at 3 Newton Street.  [Hardie Affidavit ¶¶ 26–29].

Esperitusanto agreed to sell cocaine at 3 Newton Street and was able to access 3 Newton Street

for the sale.  [Id.].  Shortly after Esperitusanto and the CS talked, an unidentified male traveled to

141 Newton Street, retrieved a white package, and then went straight to 3 Newton Street where

he delivered approximately 50 grams of cocaine to the CS and accepted payment from the CS.

[Id.].  The Hardie Affidavit explains that drug traffickers typically store various drug

paraphernalia, records, and other drug-related evidence within residences or stash houses.

[Hardie Affidavit ¶¶ 36–46]; United States v. Bain, 874 F.3d 1, 23 (1st Cir. 2017) ("[A] law

enforcement officer's training and experience may yield insights that support a probable cause

determination."). While Defendant dismisses these statements as boilerplate, [ECF No. 69 at

2–4, 15, 20], "[s]ometimes formulations become boilerplate because they are so often true and

relevant." Ribeiro, 397 F.3d at 51 (affirming denial of motion to suppress and noting that it

would be "perverse" for courts to disregard statements based on a law enforcement agent's

training or experiences because they were broadly applicable). Because some drug trafficking

activity occurred at 3 Newton Street and based on the credible assertion that it is common for

further drug-related evidence to be present in such a residence, the Court concludes that the

magistrate judge's probable cause finding was sufficiently supported. See Roman, 942 F.3d at

53; Hicks, 575 F.3d at 137.

**B.     Even If There Were Not Probable Cause, the Search Was Objectively Reasonable**

Having concluded that there was a sufficient basis to support the magistrate judge's

finding of probable cause, the Court need not address the good faith exception set forth in Leon

v. United States, 468 U.S. 897 (1984). In the interest of a more complete record, however, the

Court considers Defendant's argument briefly. The Supreme Court has held that suppression is

inappropriate where, as here, officers' good faith reliance on a warrant is reasonable. Leon, 468

U.S. at 922. Defendant claims that Leon's good faith exception should not apply because Agent

Hardie's omission of more facts tying 3 Newton Street to drug dealing indicates that she could

not have reasonably believed that her affidavit established probable cause. [ECF No. 69 at

21–22]. The Government responds that Leon should apply because (1) there is no claim that the

magistrate judge abandoned her judicial role, (2) the magistrate judge properly issued a warrant

given the recent drug trafficking at the residence, and (3) even if the magistrate judge had not

properly issued the warrant, there is no basis to conclude that a reasonably well-trained officer should have known the warrant was illegal.  [ECF No. 72 at 13–16].

Evidence obtained by "officers reasonably relying on a warrant issued by a detached and neutral magistrate" should not be suppressed or excluded if that warrant is later found to be invalid.  Leon, 468 U.S. at 922 (finding the nonexistent deterrence benefits of exclusion did not outweigh the significant costs of otherwise guilty perpetrators gaining bargaining power or remaining free).  There are circumstances when this good faith exception does not apply, including when the magistrate judge was knowingly or recklessly misled by an affiant, id. at 923 (citing Franks v. Delaware, 438 U.S. 154 (1978)), when the magistrate judge abandons her judicial role, id. (citing Lo–Ji Sales, Inc. v. New York, 442 U.S. 319 (1979) (reversing denial of motion to suppress where local justice actively participated in a search based on a warrant the same justice issued)), and when an affidavit supporting a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," id. (quoting Brown v. Illinois, 422 U.S. 590, 610–11 (1975) (Powell, J., concurring in part)).

Here, because Defendant does not claim that the magistrate judge was misled or stepped outside of her judicial role, the only possible reason to for not to applying the good faith exception would be if the affidavit was lacking in indicia of probable cause.  See generally [ECF No. 69].  As previously mentioned, because drug trafficking occurred at 3 Newton Street and because it is not unreasonable to rely on an agent's training and experience, supra Section III.A, the warrant was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Leon, 468 U.S. at 923 (citations and internal quotation marks omitted); see also United States v. Levin, 874 F.3d 316, 322–23 (1st Cir. 2017) (vacating district court order suppressing evidence in child pornography case where the good faith exception

should have been applied because the government submitted a warrant application "containing a detailed affidavit from an experienced officer, describing in detail its investigation, including how [a novel computer investigative technique] works, which places were to be searched, and which information was to be seized"); Bain, 874 F.3d at 23 (finding good faith exception applied to invalidated search warrant where officers used defendant's keys seized in search incident to arrest to check every apartment door within a building to verify defendant's address for a subsequent search warrant of the same apartment that yielded firearms and heroin).  Thus, even if the magistrate judge's finding of probable cause had been improper, the law enforcement officers in question relied in good faith on the warrant, and the evidence would be admissible.[6]

## IV.      CONCLUSION

Accordingly, because the Hardie Affidavit established probable cause, Defendant's motion to suppress, [ECF No. 64], is DENIED.  Even if the affidavit supporting the warrant application were insufficient, the search was objectively reasonable.

**SO ORDERED.**

September 17, 2020                                    /s/ Allison D. Burroughs
                                                     ALLISON D. BURROUGHS
                                                     U.S. DISTRICT JUDGE

---

[6] Defendant briefly contends that the Leon's good faith exception is unconstitutional under Marbury v. Madison, 5 U.S. 137, 163 (1803) ("[W]here there is a legal right, there is also a legal remedy . . . , whenever that right is invaded.").  [ECF No. 69 at 25].  Given the almost forty years of precedent following Leon, and the Supreme Court's undoubtable knowledge of Marbury before deciding Leon, this Court declines Defendant's invitation to overrule Leon.