UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | Criminal Action No. 19-cr-10164-ADB |
| LUIS BERROA, | * | |
| | * | |
| Defendant. | * | |

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS

BURROUGHS, D.J.

Defendant Luis Berroa ("Defendant") has moved to suppress evidence obtained from the search of his Samsung Galaxy S8 cellphone (the "Phone"), which was seized during a search of 3 Newton Street, Apartment No. 2 in Lawrence, Massachusetts ("3 Newton Street"). [ECF No. 81]. Defendant argues that the search was unreasonable and violated the Fourth Amendment because the investigating authorities seized the Phone on March 13, 2019 but did not apply for a warrant to search its contents for more than a year. See generally [ECF No. 82]. For the reasons outlined below, Defendant's motion to suppress, [ECF No. 81], is DENIED.

I.      BACKGROUND

The parties do not dispute the relevant facts, which the Court draws from the affidavits and exhibits that the parties have filed in connection with the instant motion and an earlier motion to suppress, [ECF No. 64].[1]

_____

[1] This is Defendant's second motion to suppress. On July 6, 2020, he moved to suppress "any and all fruits of the search" of 3 Newton Street. [ECF No. 64 at 1]. On September 17, 2020, the Court denied Defendant's motion. [ECF No. 79].

On March 12, 2019, Magistrate Judge Dein issued a search warrant permitting agents from the Drug Enforcement Administration ("DEA") to search 3 Newton Street and "certain telephones located in or on the premises" (the "March 2019 Warrant").  [ECF No. 66-1 at 1].  The Phone was not among the telephones identified in the warrant.  See [id.].  The next day, DEA agents executed the search on 3 Newton Street as authorized by the March 2019 Warrant.  [ECF No. 84-1 ¶ 8].  In one of the bedrooms, the agents found Defendant, who was sleeping, as well as fentanyl, guns, and the Phone.  [Id. ¶¶ 8–9].  The agents arrested Defendant and seized the Phone.[2]  [Id. ¶¶ 8, 11].  On May 15, 2019, a grand jury indicted Defendant on drug and gun offenses.  [ECF No. 16].  On June 10, 2020, DEA Special Agent Raymond R. Greene applied for a warrant to search the contents of the Phone, [ECF No. 84-2], which was issued by Magistrate Judge Dein the same day (the "June 2020 Warrant"), [ECF No. 84-3].  The Government searched the Phone in September 2020, [ECF No. 87 at 4], and then produced the contents, which totaled approximately 22,000 pages, to Defendant on October 5, 2020, [ECF No. 81-1 ¶ 5].

## II.     LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., amend. IV.  "The Fourth Amendment itself 'contains no requirements about *when* the search or seizure is to occur or the *duration*.'"  United States v. Syphers, 426 F.3d 461, 469 (1st Cir. 2005) (quoting United States v. Gerber, 994 F.2d 1556, 1559–60 (11th Cir. 1993)).

> It is common for the police to temporarily seize a suspect's personal property if they have probable cause and intend to apply for a warrant to search the property for evidence of a crime.  When the police do so, however, the Fourth Amendment requires that they act with diligence to apply for a search warrant.

---

[2] Defendant concedes, for purposes of this motion, that the Phone was lawfully seized either as incident to his arrest or pursuant to the "plain view" doctrine.  [ECF No. 82 at 2].

United States v. Smith, 967 F.3d 198, 202 (2d Cir. 2020); see also United States v. Gomes, 330 F. Supp. 3d 720, 731 (D.R.I. 2018) ("A temporary warrantless seizure supported by probable cause is reasonable as long as the police diligently obtained a warrant in a reasonable period of time." (internal quotation marks omitted)).  "The reasonableness of the delay is determined 'in light of all the facts and circumstances,' and 'on a case-by-case basis.'"  United States v. Mitchell, 565 F.3d 1347, 1351 (11th Cir. 2009) (quoting United States v. Mayomi, 873 F.2d 1049, 1054 n.6 (7th Cir. 1989)); see also Gomes, 330 F. Supp. 3d at 731 ("The reasonableness of the delay between lawful seizure and seeking a warrant is up to the discretion of the court. Courts must balance the privacy-related and the law enforcement-related concerns to determine if [an] intrusion was reasonable." (alteration in original) (internal citations and quotation marks omitted)).

In discussing the exclusionary rule, the First Circuit has stated that

[t]he sole purpose of the exclusionary rule, the [c]ourt has repeatedly held, is to deter future Fourth Amendment violations.  Exclusion is not a personal constitutional right, nor one meant to redress the injury caused by a Fourth Amendment violation.  The exclusionary rule therefore applies only where it result[s] in appreciable deterrence.  The inquiry must also consider the substantial social costs generated by the exclusionary rule.  The gravity of those costs requires that the rule be applicable only . . . where its deterrence benefits outweigh its substantial social costs.

United States v. Cruz-Mercedes, 945 F.3d 569, 576 (1st Cir. 2019) (alterations in original) (internal citations and quotation marks omitted).

If a warrant authorizes the search, law enforcement must comply with Federal Rule of Criminal Procedure 41(e)(2)(A)(i) by executing the warrant "within a specified time no longer than 14 days." Fed. R. Crim. P. 41(e)(2)(A)(i).  With respect to electronically stored information, the "time for executing the warrant in Rule 41(e)(2)(A) . . . refers to the seizure or

on-site copying of the media or information, and not to any later off-site copying or review."

Fed. R. Crim. P. 41(e)(2)(B).

### III.        DISCUSSION

Defendant asserts that the approximately fifteen-month delay between the March 13,

2019 seizure of the Phone and the June 10, 2020 application for a warrant to search it was

unreasonable; that he was prejudiced by such delay; and that therefore, the evidence derived

from that search should be suppressed.  See generally [ECF No. 82].  The Government counters

that the search of the Phone was authorized by the March 2019 Warrant; that the delay in

searching the Phone was reasonable under the circumstances; that Defendant suffered no

prejudice; and that, even if the search is deemed unreasonable, application of the exclusionary

rule is inappropriate under the circumstances of this case.  See generally [ECF No. 87].

As a preliminary matter, the Government argues that its search of the Phone was

explicitly authorized by the March 2019 Warrant and that it applied for the June 2020 Warrant

only "out of an abundance of caution."  [ECF No. 87 at 1–2, 4–5].  Paragraph 7 of Attachment B

(the Description of the Items to be Seized) to the March 2019 Warrant reads:

> [c]ellular telephones in the possession of or used by Encebio ESPERITUSANTO,
> Brayan LEBRON, or Giovanni BAUTISTA, and all names, words, telephone
> numbers, email addresses, time/date information, messages or other electronic data
> relating to or referencing drug trafficking and/or referencing individuals engaged
> in drug trafficking, located in the memory *of any mobile telephone*, from January
> 1, 2018 until the present, including but not limited to: . . .

[ECF No. 66-1 at 5 (emphasis added)].  The Government asserts that the phrase "of any mobile

telephone" means that the March 2019 Warrant authorized the search of the contents of any

cellphone found during the search of 3 Newton Street pursuant to the March 2019 Warrant.

[ECF No. 87 at 4–5].  The Court disagrees.  The March 2019 Warrant authorizes the seizure and

search of "[c]ellular telephones in the possession of or used by Encebio ESPERITUSANTO,

Brayan LEBRON, or Giovanni BAUTISTA."  [ECF No. 66-1 at 5].  The subsequent phrase "any mobile telephone" applies to mobile phones possessed or used by those three individuals. Although the Government might have intended to ask for authority to seize and search all phones located in the residence (including the Phone), the language is not clear enough to allow the seizure and search of mobile phones that are not associated with the three named individuals. Because the Court finds that the March 2019 Warrant did not authorize the seizure or search of the Phone, the instant motion turns on whether the fifteen-month delay between the March 13, 2019 seizure—which, though not pursuant to a warrant, is assumed to be lawful for present purposes—and the June 10, 2020 warrant application was unreasonable and, if so, whether suppression is an appropriate remedy.

### A.    Reasonableness of Delay

Defendant does not dispute that there was probable cause supporting the issuance of the June 2020 Warrant or argue that the probable cause was stale.  See generally [ECF No. 82]. Rather, he argues only that it was unreasonable to wait fifteen months after seizing the Phone to seek a warrant to search it.

In support of his argument, Defendant relies primarily on United States v. Smith, a recent Second Circuit case.  See [ECF No. 82 at 5–17].  In that case, a police officer, after seeing what he believed to be child pornography on the tablet of a man suspected of drunk driving, arrested the suspect and seized his tablet but waited thirty-one days before applying for a warrant to search its contents.  Smith, 967 F.3d at 202.  Subsequently, the defendant moved to suppress the child pornography that was found on his tablet, arguing that the delay between the seizure and the search warrant application was unreasonable.  See id. at 203.  The Second Circuit held that the delay was unreasonable and violated the Fourth Amendment but nevertheless declined to apply the exclusionary rule "because the error by the police was due to isolated negligence and

because an objectively reasonable officer would not have known in light of existing precedent that the delay violated the Fourth Amendment." Id. at 202.  In reaching this conclusion, the court considered four factors in evaluating whether the delay was unreasonable: "(1) the length of the delay, (2) the importance of the seized property to the defendant, (3) whether the defendant had a reduced property interest in the seized items, and (4) the strength of the state's justification for the delay." Id. at 203.

Although Smith is factually distinguishable from this case for a number of reasons,[3] the Court still finds the general analytical framework employed by the Second Circuit instructive. Accordingly, it will consider some of the Smith factors in assessing whether the fifteen-month delay at issue here was reasonable.

1.   Length of Delay

Here, Defendant is objecting to the delay between the seizure and the application for a search warrant rather than a delay in executing a warrant that was timely applied for.  To an extent, the Government and Defendant are talking past each other because the Government, believing that the original warrant covered the Phone, focuses its argument on the delay from the original warrant to the execution of the search.  Defendant, on the other hand, relies on the delay

---

[3] First, in Smith, if no child pornography had been found on the defendant's tablet, there would have been no viable child pornography charge (i.e., the only potential evidence that law enforcement had to support a charge was the child pornography that the officer believed he saw on the tablet).  For that reason, during the thirty-one day period between when the tablet was seized and when it was searched, the specter of that charge loomed over the defendant.  Here, because the Government's prosecution of Defendant does not rest on the contents of the Phone, he has not been in limbo for those fifteen months.  Second, whereas in the instant case, it is undisputed for present purposes that the Government has a lawful basis to possess the Phone regardless of its evidentiary value, in Smith, the tablet was in law enforcement's possession for the sole purpose of determining whether a crime had been committed.  If the police had not found child pornography, they would have had no basis for the continued seizure of the defendant's tablet.

from the seizure to the application for the second search warrant.[4]  Because the Court has concluded that the original warrant did not authorize the seizure or search of the Phone, the Phone was seized without a warrant.   Whether that warrantless seizure comported with the Fourth Amendment is not before this Court, but regardless of the justification for the seizure, the relevant amount of time remains the fifteen months between the seizure and the second warrant application.

There is no bright-line rule separating reasonable delays from unreasonable ones, and the parties have pointed to no case that is directly on point.  Courts have deemed delays far shorter than fifteen months unreasonable.  See, e.g., Smith, 967 F.3d at 202 (thirty-one days); Mitchell, 565 F.3d at 1353 (twenty-one days); United States v. Fife, 356 F. Supp. 3d 790, 800, 806 (N.D. Iowa 2019) (six months); United States v. Uu, 293 F. Supp. 3d 1209, 1211 (D. Haw. 2017) (twenty days).  In each of those cases, however, the contents of the phones or containers at issue were needed to discern whether there was a basis for a criminal charge, and had the search been fruitless, there would have been no charges.  In the instant case, any evidence on the Phone was not needed to support a new criminal charge, but rather to provide evidentiary support for a charge that was already pending and supported by probable cause independent of what was found on the Phone.

The cases cited by the Government in support of its view that the delay was not unreasonable are inapposite because, as noted above, they address the delay in executing a warrant rather than in obtaining one.  For instance, in United States v. Veloz, see [ECF No. 87 at 6], although it took eighteen months for the authorities to *complete* their review of the contents

---

[4] Defendant notes but does not rely on the delay between obtaining the second search warrant, in June 2020, and its execution, in September 2020.  See generally [ECF No. 81-1 ¶¶ 4–7].

of the devices, they obtained a supplemental search warrant to search the contents of seized devices roughly a week after seizing them.  109 F. Supp. 3d 305, 310 (D. Mass. 2015); see id. at 313 ("Although reports reflecting on-going analysis of the seized data were generated [more than a year later], there is no dispute that the government copied or attempted to copy the data from the devices almost immediately after their seizure." (internal citations omitted)).  Similarly, in United States v. Gorrell, see [ECF No. 87 at 6], though the court concluded that a ten-month delay in *executing* a search of a defendant's camera and computer was not unreasonable, the warrant had been obtained three days after the defendant was arrested.  360 F. Supp. 2d 48, 55 n.5 (D.D.C. 2004).

2.      Defendant's Relationship to the Phone and Efforts to Obtain Its Return

A second factor identified by the Smith court as relevant to evaluating the reasonableness of a delay between seizure and authorization to search is Defendant's relationship to the Phone, for example the extent to which the phone contains business or personal information, and the efforts that Defendant made to obtain its return.  There is no doubt that, in this day and age, a phone may contain virtually all of an individual's personal information, including contacts, emails, texts, banking information, photographs, and a host of other data that make the contents of a phone deeply personal.  See Riley v. California, 573 U.S. 373, 403 (2014) ("Modern cell phones are not just another technological convenience.  With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" (quoting Boyd v. United States, 116 U.S. 616, 630 (1886))).  For that reason, cellphones may be important to defendants.  On the other hand, a cellphone, particularly in the hands of a drug trafficker, might be just a business tool without any personal information whatsoever.

Here, Defendant states in his affidavit that the Phone contains personal information, [ECF No. 86 ¶ 13], but he made no effort to retrieve the Phone until October 2020 even though it was seized in March 2019.  This lack of attention to the Phone could mean that it contained incriminating evidence that he wanted to distance himself from or just that it was not that important to him, as the Government suggests.  See [ECF No. 87 at 7–8].  In his affidavit, Defendant claims that he was unaware that the Phone had been seized, and, therefore, had no reason to request its return from the Government.  [ECF No. 86 ¶¶ 10–15].  This contention, however, is belied by the fact that the Government informed his attorney that the Phone was among the items seized when Defendant was arrested.  See [ECF Nos. 87-2, 87-3, 87-4, 87-5, 87-6][5];  Levin v. Berley, 728 F.2d 551, 553 (1st Cir. 1984) ("[A] client is charged with the knowledge of his attorney." (citing Cont'l Cas. Co. v. United States, 337 F.2d 602, 603 (1st Cir. 1964)).

Notwithstanding that Defendant did not seek its return until October 2020, it seems undisputed that the Phone belongs to him and that he has not consented to the seizure or search of the Phone or taken any other action to reduce his possessory interest in it.  See Smith, 967 F.3d at 208 ("This case is unlike those where courts have found that a defendant has a diminished property interest because the defendant . . . consented to the initial seizure . . . . [The defendant] did nothing to reduce his property interest by means of consent or voluntarily

---

[5] On July 5, 2019, the Government made a production to Defendant's counsel, which included a DEA report describing the search of 3 Newton Street and Defendant's arrest.  [ECF Nos. 87-2 (production email), 87-3 (DEA report)].  The report noted that the Phone was seized and was being held by the DEA.  [ECF No. 87-3 at 5].  Approximately two weeks later, Defendant's counsel emailed the Government inquiring about, among other things, whether there were any fingerprint reports concerning the Phone.  [ECF No. 87-6 at 3].  On November 21, 2019, the Government made another production, which included the March 2019 Warrant return.  [ECF Nos. 87-4 (production email), 87-5 (warrant return)].  The Phone was listed among the items seized.  [ECF No. 87-5 at 3].

relinquishing control . . . .").  On the other hand, as the Government points out, [ECF No. 87 at 9], Defendant has been in custody since his arrest, see [ECF Nos. 10, 15, 63], a fact which some courts have identified as being relevant to this analysis.  See, e.g., United States v. Conley, 342 F. Supp. 3d 247, 269 (D. Conn. 2018) ("Additionally, [defendant] had a diminished possessory interest in the cell phone because Conley was detained at Wyatt Detention Facility following the arrest, and Wyatt does not permit its inmates to possess cell phones."); United States v. Brantley, No. 17-cr-00077, 2017 WL 5988833, at *2 (N.D. Ga. Dec. 4, 2017) ("Furthermore, [defendant], having been arrested and detained, was not deprived of access to and use of the seized cellular telephones, because he was in custody, and he does not contend he was allowed possession of a cell phone while detained.").  Additionally, the fact that probable cause existed to search the Phone, which Defendant does not contest, may also be relevant to the analysis.  See Smith, 967 F.3d at 208–09 ("[T]he existence of probable cause had bearing on Smith's possessory interest. It entitled the police to immediately seize the tablet so that they could apply for a warrant to search its contents.").

3.    Justification for Delay

A third factor that the Court will consider is the Government's purported justification for the delay.  The Government offers little in the way of justification for the fifteen-month delay beyond the need to conserve resources.[6]  The Court is mindful of the Government's need to judiciously marshal its resources and recognizes that "[i]n the era of pervasive cell phone usage,

---

[6] The Government's argument that "two months after [Defendant] was indicted, lead counsel for the United States transitioned the case to another Assistant U.S. Attorney while on parental leave," [ECF No. 87 at 7], is unavailing.  The Government, like all litigants, is generally responsible for complying with timing requirements notwithstanding changes in counsel.  More importantly, that a new A.U.S.A. was assigned to the case two months after the indictment (i.e., in July 2019) does not explain why the warrant was not sought until June 2020, nearly a year later.

the government does not search all cell phones it seizes pursuant to search warrants even if it has the authority to do so." [ECF No. 87 at 6–7]. This explanation, however, goes only so far. That the Government sometimes forgoes or delays searches of seized phones does not relieve it of its obligation to adhere to the Fourth Amendment by obtaining the authority to search them in a reasonably timely manner. At a certain point, the Government must decide between applying for a search warrant or forgoing the potential evidence on the device. As discussed above, the Government cites a number of cases for the proposition that courts have permitted delays in cases involving computers because searching computers is complex, [id. at 6], which, although logically applicable to the search of modern cellphones (which essentially function as computers), are not particularly persuasive because they relate to the time it takes to complete a search after a warrant has been obtained. Here, the issue is that the Government waited fifteen months before even seeking a warrant. Complexity may be a sound justification for failing to timely complete a search but not for failing to timely obtain a warrant. Moreover, all the facts contained in the affidavit that Special Agent Greene filed in support of the June 2020 Warrant should have been known to the Government shortly after the Phone was seized. See generally [ECF No. 84-1 (containing details of the March 13, 2019 search and statements, based on Special Agent Greene's training and experience, regarding how drug dealers typically use cellphones)]. Put differently, nothing the Government learned during the fifteen months between March 2019 and June 2020 affected the substance of the warrant application.

4.      Prejudice

The Court will also consider the prejudice to Defendant resulting from the delay as the final reasonableness factor.[7]  This is distinct from any prejudice that might result from the use of evidence linked to the Phone.  In other words, the potential admission of any evidence found on the Phone is not prejudice caused by the delay.  Defendant was, however, potentially prejudiced by not being made aware of the full extent of the Government's evidence against him until relatively late in the game and therefore having to make important decisions regarding how to litigate his case (e.g., if and when to plead) based on incomplete information.  There are two obvious rejoinders.  First, because the Government had not yet searched the Phone, the parties were operating based on the same incomplete information.  Second, assuming that Defendant was aware that the Phone had been seized,[8] he was presumably familiar with its contents and could have taken them into account in making litigation decisions.  In his brief, Defendant essentially claims that the Government sandbagged him by dumping a pile of evidence on him and his counsel on the eve of trial.  [ECF No. 82 at 19].  This is factually inaccurate.  Because of the COVID-19 pandemic, the Court has continued all criminal trials at the request of a defendant or his counsel, including in this case.  Although the parties were told to be trial ready by fall 2020, an official trial date (of May 3, 2021) was not set until January 14, 2021, [ECF No. 94], and Defendant and his counsel therefore have had (and will have) ample time to review the evidence seized from the Phone.

---

[7] Although the Smith court did not include prejudice among the reasonableness factors, the Court believes it is relevant to the analysis.

[8] In fact, it is possible that not requesting the Phone's return was a litigation tactic.  That is, Defendant may have taken a "let sleeping dogs lie" approach, believing that the Government had forgotten about the Phone or elected not to search it given the strength of the evidence against Defendant and the need to prioritize computer searches.

Following consideration of the factors discussed above, the Court concludes as follows regarding the reasonableness of the delay before procuring a warrant: under the facts of this case, fifteen months was an unreasonable delay even accepting that (1) the Phone was lawfully seized, (2) the Government had a legitimate interest in conserving its resources by delaying searches that might never be necessary, (3) Defendant did not request the Phone's return, and (4) Defendant was only marginally prejudiced.  The Government cannot justify a failure to comply with the dictates of the Fourth Amendment based solely on vague claims about resources.

### B.      Application of the Exclusionary Rule

Even though the fifteen-month delay violated the Fourth Amendment, the Court concludes that applying the exclusionary rule here would be inappropriate under the circumstances.  As noted above, the Court will apply the exclusionary rule only if "its deterrence benefits outweigh its substantial social costs."  Cruz-Mercedes, 945 F.3d at 576.

Here, the cost of suppression is clear.  The Phone was discovered next to a bag of fentanyl pills in a room that also contained guns and additional fentanyl.  [ECF No. 84-1 ¶ 8]. As Special Agent Greene attested to in his affidavit, drug dealers often rely on their cellphones to communicate regarding illicit matters and/or store drug-related information.  [Id. ¶¶ 13–15]. Accordingly, to grant Defendant's motion would almost certainly be to "ignore reliable, trustworthy evidence bearing on guilt or innocence."  Davis v. United States, 564 U.S. 229, 237 (2011).

Against these substantial costs, the Court must consider what deterrent benefits, if any, would result from suppressing the evidence derived from the Phone.

> [T]he deterrence benefits of exclusion var[y] with the culpability of the law enforcement conduct at issue.  When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.  However, when the police act with an objectively reasonable good-faith belief that their conduct is

lawful . . . or when their conduct involves only simple, isolated negligence . . . the deterrence rationale loses much of its force, and exclusion cannot pay its way.

United States v. Levin, 874 F.3d 316, 322 (1st Cir. 2017) (alterations in original) (internal citations and quotation marks omitted).  In assessing an objectively reasonable good-faith belief in the delay context, courts look to whether a reasonably well-trained officer would recognize that the delay violated the Fourth Amendment.  See Smith, 967 F.3d at 212.

Here, there is no evidence that any law enforcement officer acted with any deliberate, reckless, or grossly negligent disregard for Defendant's rights.[9]  At the outset, it seems as though the Government believed that the March 2019 Warrant authorized a search of the Phone.  It may in fact have intended to draft a warrant that did authorize that search, but the warrant, as drafted, did not clearly cover phones beyond those specifically enumerated in the warrant.  Then, it seems that the Government lost track of the Phone or did not think to have it searched until trial became more likely.  At that point, perhaps realizing that the Phone had sat too long or that searching it may not have been authorized by the March 2019 Warrant, the Government applied for and obtained the June 2020 Warrant.  See [ECF No. 87 at 7 ("When this case appeared likely to proceed to trial, the government obtained a second warrant, out of an abundance of caution, to search the defendant's cell phone.").  There is nothing in the record to suggest bad faith or anything beyond an instance of isolated negligence.  The Court thus concludes that the law enforcement officers here acted with an "objectively reasonable good-faith belief that their

---

[9] Although the exclusionary rule may be applied to deter "systemic negligence," Herring v. United States, 555 U.S. 135, 144 (2009), on the record before it, the Court cannot conclude that this case involves an issue of systemic negligence meriting deterrence.  The Government seemingly implies that delays of similar length in searching phones and computers are commonplace, see [ECF No. 87 at 6–7], but the Court understands it to be referring to delays in searching computers and phones pursuant to a search warrant and not to delays in obtaining warrants for devices seized without one.

conduct [wa]s lawful," <u>Levin</u>, 874 F.3d at 322, and that a reasonably well-trained law enforcement officer would not have known that waiting fifteen months to apply for a search warrant for the Phone would violate the Fourth Amendment, <u>Smith</u>, 967 F.3d at 212, even if the officer should have realized that the original warrant was insufficient.  As is clear from this order, the "constitutional reasonableness of delay depends on the assessment and balancing of multiple factors" and this, like many areas of Fourth Amendment law, has not "reduced itself to bright-line rules."  <u>Id.</u>  Although a reasonably well-trained officer should generally recognize that applying for a warrant cannot be delayed indefinitely or even for fifteen months, the Court cannot find bad faith where the Phone was seized during the execution of a valid search warrant and the officers may have believed that the language of the March 2019 Warrant authorized the seizure and search of the Phone, especially where Defendant was incarcerated and did not request the Phone's return.  Accordingly, under these circumstances, because "exclusion cannot pay its way," <u>Levin</u>, 874 F.3d at 322, the Court will not suppress the evidence at issue.

Although the Court declines to apply the exclusionary rule in this case, it is by no means endorsing the Government's conduct.  Under the facts of this case, fifteen months was too long to wait to apply for a search warrant.  The original warrant was, at best, sloppily drafted and even if the Government intended for it to cover all phones found at 3 Newton Street, law enforcement should not assume that there is necessarily probable cause to seize the phone of a person they did not know and had not expected to find there.  If, as in this case, there are other reasons that permit the seizure of a phone, the Government must nonetheless move more expeditiously to secure a warrant to search it.

## IV.      CONCLUSION

Accordingly, Defendant's motion to suppress, [ECF No. 81], is <u>DENIED</u>.

**SO ORDERED.**

January 15, 2021                                                      /s/ Allison D. Burroughs
                                                                     ALLISON D. BURROUGHS
                                                                     U.S. DISTRICT JUDGE