UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 19-cr-10164-ADB |
| ) | |
| LUIS BERROA, ) | |
| ) | |
| Defendant. ) | |

## GOVERNMENT'S TRIAL BRIEF

Pursuant to the Court's pre-trial order, the government hereby submits its Trial Brief in connection with the above-captioned matter.

1. The Indictment

Luis Berroa is charged in Count One of the Indictment with violating Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B)(vi): Possession with Intent to Distribute 40 Grams or More of Fentanyl; and in Count Two of the Indictment with violating Title 18, United States Code, Section 924(c)(1)(A)(i): Possession of a Firearm in Furtherance of a Drug Trafficking Crime. Docket No. 16.

2. Statement of Facts

As part of a larger drug investigation, on March 12, 2019, agents of the Drug Enforcement Administration ("DEA") obtained a search warrant for 3 Newton Street, Apartment 2, Lawrence Massachusetts (the "Searched Premises"). One of the controlled purchases of narcotics in that larger investigation took place inside the Searched Premises on February 28, 2019. Luis Berroa was not present during that controlled purchase.

On March 13, 2019, agents executed the search warrant on the Searched Premises. Inside, agents found Berroa sleeping in his bedroom. They also found another individual in the second bedroom. In Berroa's bedroom, agents found the following items:

- A plastic bag containing round blue tablets on top of a dresser (11 grams fentanyl, DEA Ex. 7);
- The defendant's passport in the dresser;
- A pink box containing a drug finger press and three bags of white powder inside the drop ceiling (22 grams fentanyl, DEA Ex. 10);
- A plastic bag containing white powder inside the drop ceiling (5 grams fentanyl, DEA Ex. 12);
- A plastic bag containing rectangular pills marked "XANAX" inside the pocket of a gray shirt inside the closet (23 grams Alprazolam, DEA Ex. 11);
- A plastic bag containing a white substance inside the pocket of a jacket in the closet (31 grams fentanyl, DEA Ex. 9)
- A Taurus Model PT24/7 .40 caliber pistol with clip, bearing serial number SF054610 found in a red and black duffel bag in the closet;
- A Jimenez Arms, Model J.A.380, .380 caliber pistol with clip, bearing serial number 114284 found in a red and black duffel bag in the closet;
- 12 rounds of .380 ammunition found in a red and black duffel bag in the closet;
- A Samsung Galaxy S8 cellular phone located on top of the dresser.

In the second bedroom, agents found over $19,000 in counterfeit currency, a plastic bag of white powder (308 grams Procaine, DEA Ex. 8), a round blue tablet (.12 grams Oxycodone, DEA Ex. 13), two ledgers, and one AWS scale.

The drugs recovered from the Searched Premises were sent to the DEA laboratory for testing and tested positive for fentanyl and other drugs as indicated above. The total fentanyl drug weight recovered from the defendant's bedroom was 69 grams. The firearms were examined and test fired at the Massachusetts State Police Laboratory. Agents took photographs of the Searched Premises and the seized items.

In response to a subpoena, the Massachusetts Registry of Motor Vehicles ("RMV") provided documents showing that the defendant had listed the Searched Premises as his residence in vehicle registrations and driver's license applications beginning in 2010.

Agents obtained a search warrant for the defendant's cellular phone recovered from his bedroom. A search of the downloaded contents of the cellular phone revealed saved images of drugs in pill and powder form and three different handguns, among other images. The search also revealed text messages indicative of drug trafficking activity. At least one of the photos of the handguns appears to be the Taurus PT 24/7 handgun seized from the defendant's bedroom.

3. <u>Lay Witness Testimony</u>

   a. *Law Enforcement Agents:* The government plans to call several law enforcement agents and officers who were present during the search of the Searched Premises. They will describe and catalog the items found in the search, authenticate and describe photographs taken during the search, and testify to portions of the chain of custody for the drug evidence.

   b. *Law Enforcement Lay Opinion:* The government plans to call law enforcement witnesses to offer lay opinion testimony about the tools of the drug trade, the use of firearms to protect drugs and drug proceeds, typical markings on different types

    of pharmaceutical and counterfeit pills, and common meanings for drug slang, and distribution versus personal use quantities of fentanyl.

   c. *Cell Phone Extraction Testimony*: The government plans to admit exhibits from the defendant's cellular phone.  Absent a stipulation, we expect to introduce testimony from the agent who conducted the extraction concerning the manner in which data was extracted.  The entire extraction of the cellular phone and the Cellebrite reader were previously provided to the defendant.  Additionally, copies of images taken from that cellular phone that the government expects to introduce individually at trial were produced.

4. <u>Expert Witness Testimony</u>

   a. *DEA Chemists*: Absent stipulations, the government intends to introduce evidence from four DEA chemists regarding their testing of the fentanyl and Xanax seized from the defendant's bedroom and portions of the chain of custody for those drug exhibits. The government has produced the drug certifications, testing and analysis documents, and the chemists' CVs.

   b. *Firearms Expert*: Absent a stipulation, the government will call a firearms expert from the Massachusetts State Police Firearms Identification Section to testify that the two firearms seized from the defendant's bedroom are "firearms" under the federal definition in 18 U.S.C. § 921(a)(3).  The government has produced the expert's report, testing worksheets, and CV.

   c. *Fingerprint Expert*: Absent a stipulation, the government will call a fingerprint expert to testify to the fingerprint testing and analysis conducted on the pink box which contained the drug finger press and three bags of fentanyl found in the drop

ceiling and the two firearms found in the defendant's closet. The government has produced the expert's reports, testing worksheets, and CV.

5. <u>Exhibits:</u>

   a. Drug Exhibits, firearms, ammunition, and cellular phone seized from the defendant's bedroom;

   b. Photographs from the search of the Searched Premises;

   c. Documents from the Massachusetts RMV obtained pursuant to subpoena showing the defendant's long-term residence at the Searched Premises;

   d. Images, text messages, and search history from the extraction of the defendant's cellular phone.

6. <u>Stipulations of Fact</u>

None at this time. The parties have had preliminary discussions about possible stipulations regarding chain of custody, the fact that the seized firearms qualify as firearms under federal law, fingerprint evidence, business record certification for RMV documents, and authentication of files found in the defendant's cellular phone.

The government is planning to propose a stipulation regarding the identification of the defendant as the man arrested in the bedroom of the Searched Premises, which contained the drugs and guns at issue in this case. This stipulation may obviate the need for an in-court identification. Additionally, given that the government intends to admit photographs of the defendant taken from his cellular phone to show his ownership and use of that phone, it may become necessary to request that the defendant remove his mask so the jurors can see his face and compare it with the photographs.

7. <u>Anticipated Evidentiary Issues</u>

    a. *Lay Opinion Evidence:* The government plans to call law enforcement witnesses to testify about that the quantities of fentanyl found in the defendant's bedroom were consistent with distribution rather than personal use, explain the various tools of the drug trade including the use of AWS scales, finger presses, and firearms, to explain some of the street slang and coded language in text messages extracted from the defendant's cell phone, and to testify regarding typical markings on different types of pharmaceutical and counterfeit.  The government has filed a motion *in limine* addressing this issue.

    b. *Potential Impeachment Information:*  Pursuant to a protective order, the government produced a letter of caution from the personnel file of one of its law enforcement witnesses.  The government believes that testimony concerning this letter of caution is inadmissible under Fed. R. Evid. 608.  The government has filed a motion *in limine* addressing this issue.

    c. *Admission of Evidence from Defendant's Cellular Phone*: The government intends to admit photographs, text messages, and search history from the defendant's cellular phone indicative of drug trafficking.  The defendant has filed a motion *in limine* seeking to exclude that evidence.  The government will respond to that motion by April 16, 2021 pursuant to the deadline set in this Court's pretrial order.

8. <u>Voir Dire and Jury Instructions</u>

The government filed its proposed voir dire questions and proposed jury instructions pursuant to the Court's pretrial order.

9. <u>Special Arrangements</u>

    a. *Paralegal*. The government respectfully requests that, in addition to trial counsel, the Court allow Taramarie Pellerin, a paralegal from the United States Attorney's Office, to sit at counsel table. Ms. Pellerin is an integral member of the prosecution team and will assist the undersigned counsel in their efforts to introduce the physical evidence and exhibits in this case.

    b. *Witnesses*. The DEA Chemists and Fingerprint Expert are traveling from out of state. All other witnesses are local. Depending on witness schedules and the actual date that trial begins, the government may request that certain witnesses be allowed to testify out of order.

    c. *Case Agent*. The government requests that the Court designate DEA Special Agent Raymond Greene and/or Jill Booth as case agent.

    d. *Length of Trial*. The government expects its case-in-chief to last three to four trial days, excluding jury selection.

Dated: April 9, 2021

                              Respectfully submitted,

                              NATHANIEL R. MENDELL
                              Acting United States Attorney

                By:    */s/ Stephen W. Hassink*
                              Katherine Ferguson
                              Stephen W. Hassink
                              Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                              */s/ Stephen W. Hassink*
                                              Stephen W. Hassink
                                              Assistant United States Attorney

Date: April 9, 2021