## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA ) | Case No. 1:19-cr-10164-ADB |
| ) | |
| v.                              ) | |
| ) | |
| LUIS BERROA,                    ) | |
| ) | |
| Defendant.                 ) | |
| ) | |
| _____) | |

## OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE CONCERNING THE ADMISSIBILITY OF LAW ENFORCEMENT LAY OPINION TESTIMONY

The Government's motion to admit lay opinion testimony from law enforcement officers provides a largely accurate summary of the state of the law in this circuit.  Regrettably, that view flies in the face of the text of Federal Rules of Evidence 701 and 702 and the accompanying advisory committee note, and it is "at odds with virtually every other circuit."  United States v. Moon, 802 F.3d 135, 147 n.9 (1st Cir. 2015) (Lipez, J., speaking only for himself).  In fact, Rule 701 was amended precisely "to eliminate the risk that the reliability requirements set forth in Rule 702 [and the expert witness disclosure requirements of Fed. R. Crim. P. 16] will be evaded through the simple expedient of proffering an expert in lay witness clothing"—the very risk the Government's motion seeks to realize.  Fed. R. Evid. 701 advisory committee's note on the 2000 amendments.  The First Circuit's approach, embraced by the Government, unjustifiably ignores Congress's intent by substituting "lay witness clothing" in for police uniforms whenever law enforcement officers testify.  Scholars, other circuit courts, and Judge Lipez (joined by two other First Circuit judges) have all roundly criticized the First Circuit's approach as "aberrant and misguided."  United States v. Moon, 823 F.3d 102 (1st Cir. 2016) (Lipez, J., statement re denial

of en banc review, joined by Torruella and Thompson, JJ.).  Even if this Court finds itself bound by law of the circuit concerning the admission of law enforcement opinion testimony under Rule 701, the Court should still exclude the Government's proffered opinion testimony that drug distributors use weapons to protect drugs and drug proceeds since that testimony is not "helpful" under either Rule 701 or 702 and is unduly prejudicial under Rule 403.  The Government's motion should accordingly be denied and the proffered testimony excluded.

## I.      Analysis

A.      Rules 701 and 702 and the Advisory Committee Note Qualify Police Officers as Experts When Providing Opinion Testimony Such as That Proffered by the Government

Reading Federal Rules of Evidence 701 and 702 together unambiguously demonstrates that law enforcement officers provide expert—not lay—opinions when they testify on topics like those the Government seeks to introduce.  The proffered testimony includes (1) opinion testimony that drugs and certain other items are consistent with drug distribution; (2) opinion testimony interpreting slang or coded language; (3) opinion testimony about the markings that appear on pharmaceutical and counterfeit pills; and (4) opinion testimony that drug distributors use weapons to protect drugs and drug proceeds.  ECF 112 ("Gov't's Mot.") at 1.  As the Federal Rules of Evidence are congressional enactments, courts apply traditional rules of statutory interpretation when parsing their meaning.  United States v. Bauzó-Santiago, 867 F.3d 13, 18 (1st Cir. 2017) (citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 163 (1988)).  A court starts with the text and gives effect to its plain meaning absent an "an absurd result or one manifestly at odds with the [rule's] intended effect." Id. (alteration in original) (quoting Colón-Marrero v. Vélez, 813 F.3d 1, 11 (1st Cir. 2016)).  "In considering the meaning of the text, [courts] read a legislative enactment as a whole, 'since the meaning of statutory language, plain or not, depends on context.'"  Id. (quoting United States v. Rivera, 131 F.3d 222, 226 (1st Cir. 1997) (en banc)).

Rule 701 allows witnesses to testify as to opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding of the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Rule 702, in contrast, explains that witnesses who provide "scientific, technical, or other specialized knowledge" based on their "knowledge, skill, experience, training, or education" are qualified as experts and must meet certain other criteria before testifying in the form of an opinion. Fed. R. Evid. 702. The specialized knowledge which the rules refer to "results from a process of reasoning which can be mastered only by specialists in the field;" it may be more easily understood by comparison to a lay opinion which "results from a process of reasoning familiar in everyday life." Fed. R. Evid. 701 advisory committee's note on the 2000 amendments (quoting State v. Brown, 836 S.W.2d 530, 549 (1992)); United States v. Valdivia, 680 F.3d 33, 60 (1st Cir. 2012) (Lipez, J., concurring) (explaining that "the explicit language of Rule 702 sets forth a bright line rule" for determining whether a witness is testifying as an expert); United States v. Oriedo, 498 F.3d 593, 603 n.10 (7th Cir. 2007) (explaining that "Rule 702 itself . . . specifically defines a witness' qualification as an expert to arise because of "knowledge, skill, experience, training or education" (emphases in original)). In other words, "[l]ay opinion testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." United States v. Peoples, 250 F.3d 630, 641 (8th Cir. 2001).

The Government openly admits that the testimony it wishes to introduce is specialized—based on the law enforcement officers' "extensive experience investigating drug organizations," Gov't Mot. at 4—and not that of an untrained layman, such as the typical juror:

> [T]he anticipated law enforcement testimony regarding the modus operandi of drug dealers will assist the triers of fact with determining facts at issue in the case. A typical juror is unlikely to be familiar with the practices of drug traffickers, including equipment used to process drugs for distribution, typical distribution quantities, common drug storage modalities, use of weapons, record-keeping, and vernacular.

Gov't Mot. at 3–4 (emphasis added).  Remarkably, the Government argues that the specialized nature of the knowledge in its proffered testimony supports the admission of law enforcement testimony as a lay opinion under Rule 701.  This gets the law brazenly backward and underscores the problem with the First Circuit's approach.  Such specialized knowledge, outside the realm of common understanding, is precisely the type of expert opinion testimony contemplated by Rule 702.  See United States v. Garcia, 413 F.3d 201, 217 (2d Cir. 2005) (explaining that witness's "reasoning process was not that of an average person in everyday life; rather, it was that of a law enforcement officer with considerable specialized training and experience in narcotics trafficking" and therefore that the "government was obliged to demonstrate its admissibility under Rule 702 or forego its use"); United States v. Fenzl, 670 F.3d 778, 782 (7th Cir. 2012) (explaining that "[w]hen a DEA agent's 'testimony was not limited to what he observed in the search or to other facts derived exclusively from this particular investigation [but] instead . . . brought the wealth of his experience as a narcotics officer to bear on those observations and made connections for the jury based on that specialized knowledge,' he was giving expert rather than lay testimony" (second alteration in original) (quoting Oriedo, 498 F.3d at 603–04)); Peoples, 250 F.3d at 641 ("Law enforcement officers are often qualified as experts to interpret intercepted conversations using slang, street language, and the jargon of the illegal drug trade.  What is essentially expert testimony, however, may not be admitted under the guise of lay opinions." (citations omitted)); United States v. Figueroa-Lopez, 125 F.3d 1241, 1245 (9th Cir. 1997) (explaining that "testimony . . . to inform the jury of the techniques employed by drug dealers in their illegal trade, techniques with which

4

an ordinary juror would most probably be unfamiliar[,] . . . could have been admitted as <u>expert opinion</u> testimony to inform the jury about the methods and techniques used by experienced drug dealers, <u>if</u> the law-enforcement agents had been called as experts and properly qualified as such" (emphases in original)); <u>see also</u> <u>United States</u> v. <u>Henry</u>, 848 F.3d 1, 11 (1st Cir. 2017) ("Police officers' interpretations of the jargon used within criminal circles may 'give the jury the benefit of an independent body of <u>specialized knowledge</u>.'" (emphasis added) (quoting <u>United States</u> v. <u>Albertelli</u>, 687 F.3d 439, 446 (1st Cir. 2012)); <u>United States</u> v. <u>Watson</u>, 260 F.3d 301, 307 (3d Cir. 2001) ("[T]he operations of narcotics dealers [including the meaning of drug jargon and methods of business] have repeatedly been found to be a suitable topic for expert testimony because they are not within the common knowledge of the average juror.").[1]

If there were any ambiguity as to whether the Government's proffered testimony was that of an expert, Rule 701's title and accompanying advisory committee note would quickly and decisively dispel it. First, the statute's title reinforces the view taken by Berroa. <u>See</u> <u>Bollat Vasquez</u> v. <u>Wolf</u>, 460 F. Supp. 3d 99, 110 n.17 (D. Mass. 2020) (explaining that although "[t]he title of a statute . . . cannot limit the plain meaning of the text," "statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute" (alterations in original) (quoting <u>Fla. Dep't of Revenue</u> v. <u>Piccadilly Cafeterias, Inc.</u>, 554 U.S. 33, 47 (2008)). Rule 701 is entitled "Opinion Testimony by Lay Witnesses."[2] As the word "lay" is undefined, a

---

[1] <u>See</u> Seth Stoughton, Evidentiary Rulings As Police Reform, 69 U. Miami L. Rev. 429, 453 (2015) ("For policing, the best solution may be to acknowledge that a great deal of opinion testimony by police officers is likely beyond the permissible scope of lay testimony because it is based on specialized knowledge: the officer's training and experience."); Evan M. Fitzgerald, Comment, Lay Opinion Outliers: Reexamining the Unwarranted Law Enforcement Exception, 33 Crim. Just. 41, 42 (Spring, 2018) ("Only by misreading Rules 701 and 702 can a court perpetuate a law enforcement exception for experiential testimony.").

[2] Although the titles of Rules 701 and 702 speak of lay and expert witnesses, in fact, "the Evidence Rules do 'not distinguish between expert and lay <u>witnesses</u>, but rather between expert and lay <u>testimony</u> [so] it is possible for the same witness to provide both lay and expert testimony in a single case.'" <u>United States</u> v. <u>Sepúlveda-Hernández</u>, 752 F.3d 22, 34 (1st Cir. 2014) (emphases and alteration in original) (quoting Fed. R. Evid. 701 advisory committee's note on the 2000 amendments).

court gives it its ordinary meaning, and courts often resort to dictionaries to do so.  Penobscot
Nation v. Frey, 3 F.4th 484, 491 (1st Cir. 2021) (en banc).  Merriam Webster defines "lay" as "not
of a particular profession" and also as "lacking extensive knowledge of a particular subject."
https://www.merriam-webster.com/dictionary/lay;  see  https://www.dictionary.com/browse/lay
(defining "lay" as "not belonging to, connected with, or proceeding from a profession, especially
the law or medicine").  Rule 702 concerns "Testimony by Expert Witnesses," i.e., opinion
testimony that is not lay.  Law enforcement testimony of the sort proffered by the Government
falls under Rule 702 precisely for that reason: since it is not lay.  Law enforcement is certainly a
profession, see, e.g., Arizona v. Roberson, 486 U.S. 675, 682 (1988) (using the phrase "law
enforcement profession" in an unrelated context), and the Government here wishes to have the
officers testify based on their "working knowledge"—i.e. specialized knowledge—"of the manner
in which drug distributors commonly operate, tools commonly used in the drug trade, including
weapons, and common coded language and terms used by drug traffickers to attempt to disguise
their communications."  Gov't's Mot. at 4.

Second, as alluded to in the introduction, Rule 701 was amended specifically to "eliminate
the risk" that a party might evade both Rule 702's reliability requirement and the "expert witness
disclosure requirements set forth in . . . Fed. R. Crim. P. 16 by simply calling an expert witness in
the guise of a layperson."[3]  Fed. R. Evid. 701 advisory committee's note on the 2000 amendments.
In doing so, the advisory committee note cites explicitly to a Ninth Circuit case for the proposition

---

[3] A party offering expert testimony must comply with certain discovery obligations.  See Moon, 802 F.3d at 148 n.10
(1st Cir. 2015) (panel opinion) (citation omitted).  The Government would at least have to provide a written summary
of the witness testimony it intends to use at trial, including "the witness's opinions, the bases and reasons for those
opinions, and the witness's qualifications."  Fed. R. Crim. P. 16(a)(1)(G).  This opposition constitutes the defendant's
request for such information under that rule.  By allowing law enforcement officers to provide expert opinions as lay
witnesses, defendants likely lose the opportunity to voir dire the witnesses and to challenge the expert's opinion under
Fed. R. Evid. 704(b) when it goes to the defendant's mental state.  The Government seeks to exempt itself from these
requirements by improperly classifying the expert testimony from law enforcement as lay opinion testimony; it does
not even, for example, identify the names of the officers who will be providing the testimony.

6

that "law enforcement agents testifying that the defendant's conduct was consistent with that of a drug trafficker could not testify as lay witnesses." Id. (citing Figueroa-Lopez, 125 F.3d at 1246). Similarly, the advisory committee note explains that while a witness familiar with a particular drug can provide a lay opinion that a substance looked like that narcotic, the witness could not do so if she "were to describe how a narcotic was manufactured, or to describe the intricate workings of a narcotic distribution network." Id. (first citing United States v. Westbrook, 896 F.2d 330 (8th Cir. 1990); and then citing Figueroa-Lopez). The First Circuit's approach improperly overlooks this amendment. See 5 Michael H. Graham, Handbook of Federal Evidence § 701:1 n.5 (9th ed. 2020) ("It is clear . . . that the Fifth Circuit has struggled, it is suggested unnecessarily, with law enforcement officer testimony . . . [and] continues to be off base. . . . The First Circuit similarly refuses to acknowledge the impact of the amendment to Rule 701 . . . .").[4]

Finally, the Government's attempt to provide a meaningful basis for exempting law enforcement officers in particular from the requirements of Rule 702 falls flat. It points to a passage from United States v. Vega, 813 F.3d 386 (1st Cir. 2016), where the First Circuit said, "[a] police officer noticing patterns of behavior across criminal operations uses straightforward logic to conclude a defendant's behavior fits within that pattern and thus, does not need to be qualified as an expert." Gov't Mot. at 2–3 (quoting Vega, 813 F.3d at 394). This is a distinction without a difference; it has the veneer of logic but ultimately provides no principled way of differentiating opinion testimony by law enforcement officers from opinion testimony by others with specialized knowledge. For example, a doctor likely "uses straightforward logic to conclude that [an individual's symptoms] fit within a pattern" consistent with a certain illness, but it seems hard to fathom that a doctor could provide such testimony as a lay opinion. See Fed. R. Evid. 701

---

[4] The treatise also notes that Judge Lipez has identified the correct approach, citing his concurrence in Valdivia: "At least one judge on the First Circuit is now correctly on board." Id.

advisory committee's note on the 2000 amendments (explicitly incorporating a distinction made in <u>Brown</u>, 836 S.W.2d at 549 "that a lay witness with experience could testify that a substance appeared to be blood, but that a witness would have to qualify as an expert before he could testify that bruising around the eyes is indicative of skull trauma"); <u>Oriedo</u>, 498 F.3d at 603 ("[U]nder the First Circuit's reading of the Rules . . . , a substantial argument could be made that anyone who acquires broad knowledge of a topic through <u>direct experience</u> would qualify as a lay witness; Rule 702 itself, however, specifically defines a witness' qualification as an <u>expert</u> to arise because of 'knowledge, skill, <u>experience</u>, training or education.'" (emphases in original) (quoting Fed. R. Evid. 702)); <u>Figueroa-Lopez</u>, 125 F.3d at 1246 ("Otherwise, a layperson witnessing the removal of a bullet from a heart during an autopsy could opine as to the cause of the decedent's death."). Indeed, as the Seventh Circuit has recognized, "much expert testimony" bears a "familiar syllogistic structure," a structure which the Government's proffered testimony will, by its nature, bear. <u>Tribble</u> v. <u>Evangelides</u>, 670 F.3d 753, 759 (7th Cir. 2012). That structure entails (1) "a major premise," such as that certain behaviors are consistent with drug distribution; (2) the "offer[ing of] a case-specific minor premise," such as that the defendant exhibited such behavior, and (3) "guid[ance] of the jury to a conclusion" (the defendant was distributing drugs). <u>Id.</u> Even if the witness does "not spell out that conclusion herself," "silence about the obvious implication of her testimony should not . . . immunize[] it from scrutiny under FRE 702." <u>Id.</u> Notably, all three First Circuit panelists in <u>Vega</u>, just two months after <u>Vega</u> was decided, dissented from the denial of en banc review in another case concerning the law-enforcement-lay-opinion issue. They rightly described the First Circuit's creation of a "police exception from the requirements applicable to expert testimony" as "unwarranted," "aberrant," "misguided," "flawed," and a

"serious[] misconstru[nction]" of the Federal Rules of Evidence.  Moon, 823 F.3d at 102 (Lipez, J., statement re denial of en banc review, joined by Torruella and Thompson, JJ.) (citation omitted).

The First Circuit's approach—taken by the Government in its motion in limine—is contrary to Congress's intent, as clearly pronounced in the text of the Federal Rules of Evidence and the advisory committee note thereto.  It prevents defendants from fairly challenging the underpinnings of law enforcement agents through, for example, voir dire, a meaningful cross examination, and the retention of defense experts.  See Tribble, 670 F.3d at 759–60 (explaining that, under the civil rules, "duty to disclose a witness as an expert is not excused when a witness who will testify as a fact witness and as an expert witness is disclosed as a fact witness" and that "[w]ithout proper disclosures, a party may miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert not required to provide a report" (emphases in original)).  In fact, the Government's motion does not even identify the officers whom it seeks to have provide the proffered testimony.  The Government's attempt (albeit with seeming approval from the First Circuit) to evade Rule 702's reliability requirements and the discovery obligations that attend the use of expert testimony should no longer be countenanced.  The Court should deny the Government's motion in limine and exclude the proffered testimony.

B.   The Proffered Testimony that Drug Distributors Often Use Weapons to Protect Drugs and Drug Proceeds is Not Helpful to the Jury and Is More Prejudicial than It Is Probative

Whether categorized as expert or lay opinion testimony, to be admitted, opinion testimony must be helpful to the jury.  See Fed. R. Evid. 701 (requiring that lay opinion testimony be "helpful to clearly understanding the witness's testimony or to determining a fact in issue"; 702(a) (requiring that the "expert's scientific, technical, or other specialized knowledge . . . help the trier of fact to understand the evidence or to determine a fact in issue").  The Government's proffered testimony that drug distributors use weapons to protect drugs and drug proceeds is not helpful

whatsoever.  "Lay opinions are not helpful when the jury can readily draw the necessary inferences and conclusions without the aid of the opinion." Lynch v. City of Boston, 180 F.3d 1, 17 (1st Cir. 1999) (citing 7 J. Wigmore, Wigmore on Evidence §§ 1917–18).  Here, the jury does not need an officer to state the obvious proposition that drug dealers may use weapons to protect drugs and drug proceeds.  Cf. United States v. Lopez Garcia, 672 F.3d 58, 64 (1st Cir. 2012) (Souter, J.) (explaining that it is "difficult to see how reference to the [drug conspiracy's] Mexican association was likely to add anything to what generally informed jurors would know in any event, that high level drug trade is typically violent"); United States v. Gaines, 170 F.3d 72, 80 (1st Cir. 1999) (explaining that "whether or not, in general, cash is used in, and is consistent with, drug-dealing is a dubious subject, at least in an ordinary case, for expert opinion testimony" since it "has a common sense aspect to it that makes its admission more troubling" and noting that "it might well have been error for the court to have allowed" the testimony had counsel objected to it as improper expert testimony or as "unfairly prejudicial under Federal Rule of Evidence 403" (second part quoting United States v. Tapia–Ortiz, 23 F.3d 738, 741 (2d Cir. 1994))); but cf. United States v. Pinillos-Prieto, 419 F.3d 61, 71 (1st Cir. 2005) (finding no abuse of discretion—but certainly not compelling admission—where district court admitted opinion testimony that "places which sell drugs are often protected by people with weapons," at least where "testimony about the dangerousness of drug transactions simply helped to explain [the witness's] own conduct" (citation omitted)).  As the First Circuit has explained, Rule 701 "vests considerable discretion in the trial court in determining whether the jury will be aided by lay opinion testimony." Lynch, 180 F.3d at 17 (quoting 4 J. Weinstein, Weinstein's Federal Evidence ¶ 701[05] (2d ed. 1998)).  Given the proffered testimony's blatant unhelpfulness, the Court should exercise its discretion to exclude it.

Moreover, the First Circuit has cautioned about lay opinion testimony that touches on the ultimate issue, as the Government's proffered testimony does here: "lay opinion testimony on the ultimate issue in a case must satisfy Rule 701's helpfulness requirement, and 'seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness'[s] . . . .'" United States v. Sanabria, 645 F.3d 505, 516 (1st Cir. 2011) (alterations in original) (quoting Mitroff v. Xomox Corp., 797 F.2d 271, 276 (6th Cir. 1986)).  The Government has charged Berroa with possession with intent to distribute a controlled substance and possession of a firearm in furtherance of that crime.  Even if the officer's testimony is not directly on the ultimate issue (though Berroa contends that it is), see Henry, 848 F.3d at 11, the overlap—whether Berroa possessed a firearm in furtherance of a drug trafficking crime—is great and the testimony should therefore be excluded.

Should the Court nevertheless deem the evidence "helpful" under Rule 701 or 702, still, Rule 403 permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Fed. R. Evid. 403.  "Under Rule 403, courts should weigh the risk of unfair prejudice against 'the government's need for the evidence,' among other factors."  United States v. Ford, 839 F.3d 94, 109–10 (1st Cir. 2016) (quoting United States v. Varoudakis, 233 F.3d 113, 122 (1st Cir. 2000)).  Where the evidence is of "negligible probative value," even a district court's limiting instructions may not be "sufficient to curb its prejudicial effect."  Id. at 110.

The unfair prejudice is severe, because even if a law enforcement officer does not testify formally as an expert under Rule 702, the officer's testimony still bears the imprimatur of an expert and of government endorsement.  As the First Circuit has explained, "courts must be mindful when the same witness provides both lay and expert testimony because of the heightened possibility of

undue prejudice, which is a concern that is especially acute where the dual roles of expert and fact witness are filled by a law enforcement official."  United States v. Sandoval, No. 18-1993, 2021 WL 2821070, at *12 (1st Cir. July 7, 2021) (quotation marks omitted) (quoting United States v. Flores-De-Jesús, 569 F.3d 8, 21 (1st Cir. 2009)); see United States v. Montas, 41 F.3d 775, 784 (1st Cir. 1994) ("Expert testimony on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value.  On the other hand, the risk of unfair prejudice is real.  By appearing to put the expert's stamp of approval on the government's theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged."). The Second Circuit has, for example, vacated a judgment of conviction where an "agent was presented to the jury with an aura of expertise and authority which increased the risk that the jury would be swayed by his testimony, rather than rely on its own interpretation of the" evidence. United States v. Grinage, 390 F.3d 746, 751 (2d Cir. 2004); see Stoughton, supra n.1, at 431 (explaining that even when an officer "provide[s] what is undeniably lay testimony, but using language that indicates a particular expertise," "[d]ressing a lay opinion in the robes of expertise risks artificially altering the fact-finder's determination of credibility, presenting the officer as more knowledgeable, and thus more credible, than the rules of evidence would suggest or permit"); Fitzgerald, supra n.1, at 42 ("[T]he aura of expertise surrounding a testifying police officers . . . can serve to usurp the function of the jury, especially if the police officer is not testifying as an expert.  A swayed jury may instead rely on the police testimony rather than its own interpretation.").  This undue prejudice outweighs any probative value of the proffered testimony.

Accordingly, the Government's proffered testimony is unhelpful at best and outweighed by undue prejudice at worst.  The Court should therefore exclude law enforcement opinion testimony as to drug distributors' use of weapons.

## II.     Conclusion

The First Circuit's approach—as embodied in the Government's motion—contravenes the text of the Federal Rules of Evidence, the advisory committee commentary, and the law of virtually every circuit.  Judge Lipez's admonition five years ago about the "unwarranted police exception" rings just as true today as it did then: "It is now well past the time when we should have confronted our flawed law and eliminated the ongoing unfairness to defendants."  Moon, 823 F.3d at 102 (Lipez, J., statement re denial of en banc review, joined by Torruella and Thompson, JJ.) (first part quoting Valdivia, 680 F.3d at 61).  Further, the Government's proffered testimony that drug distributors may use weapons is unhelpful to the jury and, to the extent it is marginally probative, substantially outweighed by unfair prejudice.  The prejudice is particularly pronounced because, for all practical purposes, the primary contested issue in the case is whether Berroa possessed a weapon in furtherance of the possession-with-intent-to-distribute count.  The Government's motion should be denied in full and all proffered testimony excluded, but at the very least, the proffered testimony about drug distributors' use of weapons should be excluded.

Respectfully submitted,

/s/ George W. Vien
George W. Vien (BBO# 547411)
Joshua N. Ruby (BBO# 679113)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
(617) 720-2880
gwv@dcglaw.com\

Dated:  August 18, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 18, 2021.

/s/ *George W. Vien*
George W. Vien